COMMISSIONER OF INTERNAL REVE-
NUE v. CHURCH'S ESTATE et al.

No. 8993.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 9, 1946.

Reargued May 10, 1946.

Decided March 17, 1947.

Writ of Certiorari Granted June 16, 1947.

See 67 S.Ct. 1738.

O'CONNELL, Circuit Judge, dissenting.

———————◆———————

Loring W. Post, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

William W. Owens, of New York City (Charles C. Kieffer, of New York City, on the brief), for respondent.

Before BIGGS, MARIS, GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

BIGGS, Circuit Judge.

The question presented by the case at bar is whether a transfer of property in trust made by the decedent, Church, in his lifetime is includible in his gross estate for the purpose of imposition of estate tax. See Section 811(c) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(c), Section 302(c) of the Revenue Act of 1926 as amended, 44 Stat. 70. The trust indenture, executed by Church on May 17, 1924, provided that the income from the trust should be paid to him during life, that on his death the trust should terminate, the corpus to be distributed to his issue then surviving; that in the event he should have no lawful issue surviving the principal amount of the trust with any increment should be paid in equal shares to his brothers and sisters then surviving, any child or children of a deceased brother or sister to take the share per stirpes which the parent would have been entitled to receive if living. No power to amend, alter or revoke the trust was reserved by Church. On the date of the creation of the trust he had one brother and one sister of the full blood and four half-brothers. There were then living seven children of the brothers of the half-blood. Church was then unmarried and had no children. At his death he was survived by his brother of the whole blood who had two children who were then living; by his sister of the whole blood who had one child then living; and by his four half-brothers, who had seven children then living.

The Commissioner took the position that the corpus of the trust was includible in the decedent's gross estate. The Tax Court overruled the Commissioner's determination and he appealed.

We think that the decision of the Tax Court must be affirmed. The issue presented seems to be one reserved to the determination of the Tax Court by the decisions of the Supreme Court in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct., 239, 88 L.Ed. 248, in Wilmington Trust Co. v. Helvering, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352 and in later very pertinent decisions. We cannot "identify a clear-cut mistake of law * * *" in the Tax Court's decision in the case at bar. See the Dobson case, supra, 320 U.S. at pages 501, 502, 64 S.Ct. 239, at page 247. In Equitable Life Assurance Society v. Commissioner, 321 U.S. 560, 64 S.Ct. 722, 88 L.Ed. 927, the Supreme Court stated

that it was not its task to draw inferences from facts or to supplement stipulated facts, that function resting with the Tax Court. The Supreme Court said that it could modify or reverse the decision of the Tax Court only if that tribunal's determination was "not in accordance with law." Assuredly the function referred to does not lie in this court.

In Commissioner of Internal Revenue v. Scottish American Co., 323 U.S. 119, 122, 65 S.Ct. 169, 89 L.Ed. 113, the Supreme Court reversed us, stating that the Tax Court drew certain inferences and conclusions which we could not overrule since there was no clear-cut mistake of law. Mr. Justice Murphy laid emphasis upon the validity of factual patterns as found by the Tax Court saying, Id., 323 U.S. at page 125, 65 S.Ct. at page 172, "The skilled judgment of the Tax Court, which is the basic fact-finding and inference-making body, should thus be given wide range in such proceedings." In Choate v. Commissioner, 324 U.S. 1, 65 S.Ct. 469, 89 L.Ed. 653, the Supreme Court placed emphasis upon the right of the Tax Court to weigh the legal effect of documentary evidence and in effect admonished the Circuit Courts of Appeals that the legal effect of the transactions as found by the Tax Court generally should not be disturbed. In Trust of Bingham v. Commissioner, 325 U. S. 365, 370, 371, 65 S.Ct. 1232, 89 L.Ed. 1670, it was said that even if "clear-cut questions of law" were presented the Tax Court's decision was entitled to great weight and that reviewing courts may set aside a decision of the Tax Court only when it announces a rule of general applicability which falls short of meeting statutory requirements. In this connection emphasis was laid on the fact that the Tax Court in general decided each case on a particular pattern of

circumstances. In John Kelley Co. v. Commissioner and Talbot Mills v. Commissioner, 326 U.S. 521, 66 S.Ct. 299, this doctrine seemingly was reiterated.

In the light of the foregoing decisions we think that we may not set aside the finding of the Tax Court in the instant case that "* * * no part of the corpus of the trust is includible in the estate of the decedent as a transfer 'intended to take effect in possession or enjoyment at or after his death.'" Accordingly the decision of the Tax Court will be affirmed.

O'CONNELL, Circuit Judge (dissenting).

The basis of the majority opinion is that no clear-cut mistake of law on the part of the Tax Court can be identified; consequently, under the Dobson doctrine, this court is without power to reverse the Tax Court decision. I agree that the review function of this court has been limited to clear-cut mistakes of law; but I respectfully dissent from the pronouncement that the case at bar does not fit that description.

There was no contest as to the facts, nor as to the inferences drawn by the Tax Court. In a trust created prior to March 3, 1931, the decedent reserved a life estate in the income, and, according to the Tax Court, "disposed of his interests in the corpus as well as any man could."[1] The fact remains, however, that, by operation of law, a reversionary interest in favor of decedent did exist.[2] The sole question decided by the Tax Court was whether that reversionary interest brought this case within the principle of May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, or that of Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. In short,

---

[1] But see Beach v. Busey, 6 Cir.1946, 156 F.2d 496, affirming District Court, 64 F.Supp. 220, certiorari denied 67 S.Ct. 493. An interesting feature of Beach v. Busey is that, unlike the case at bar, the settlor made a gift over to his "heirs," also designated as "lineal descendants." Clearly, the settlor in that case attempted to dispose of his interest in the corpus. The Supreme Court nevertheless denied certiorari of a decision taxing the corpus of the trust to the settlor, because of the reversionary interest created by operation of law.

[2] Appellee faintly suggests that, under the law of New York, decedent had no reversionary interest. The fundamental rule, however, is that a clear expression of purpose is required to divest the settlor of a reversionary interest, even though the trust is to continue until the death of the reversioner. See Doctor v. Hughes, 1919, 225 N.Y. 305, 311, 122 N. E. 221.

the issue was: Should an estate tax be imposed on the entire corpus because a reversionary interest created by law was coupled with a life estate? It seems to me that even a cursory reading of the Tax Court opinion establishes that the Tax Court treated this as a pure question of law. Indeed, I consider the conclusion irresistible that the issue could be treated in no other way. As I analyze this case, therefore, it was incumbent upon this court to decide whether the Tax Court correctly decided a purely legal question.

At the outset, it should be noted that the Tax Court disposed of this case before three highly important decisions of the Supreme Court were rendered: Fidelity Co. v. Rothensies, 1945, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227; Commissioner v. Estate of Field, 1945, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230; and Goldstone v. United States, 1945, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871, 159 A.L.R. 1330.[3] Although those rulings apparently have not changed the position of the Tax Court,[4] they have been the basis of a contrary ruling by four Circuit Courts of Appeals,[5] and constitute the prime reliance of appellant in this case. Consequently, the majority opinion places this court squarely in conflict with the position taken by four other circuit courts.

It seems to me the majority holding is susceptible of only two explanations: either it is felt that, notwithstanding the fact that the question is purely one of law, the Dobson doctrine forbids review unless the error of the Tax Court is beyond doubt; or the majority believes that, on the merits, the Tax Court reached the proper conclusion.

The difficulty I have with the former explanation is that, theoretically at least, once the facts are established there can be only one correct governing principle of law. While the interpretation of the Tax Court may and should be given "great weight" in determining that principle, can it be unequivocally stated that such determination of the legal question by the Tax Court does not warrant appellate scrutiny, where four circuit courts have endorsed a contrary interpretation on virtually identical facts, and the Tax Court itself has decided a similar case in favor of the imposition of the tax?[6]

The second explanation, that the Tax Court was correct on the merits, likewise is subject to penetrating analysis. Such explanation requires strained mental gyrations to remove the instant case from the language of the three Supreme Court decisions.[7] It permits radically different tax results to stem from reversionary interests which are equally remote and unlikely, dependent upon the happenstance of whether or not the settlor ignored the reality that in the eyes of the law he had not released his entire interest in the corpus. It looks away from the fact that decedent, in a formal instrument, has created a trust under the provisions of which an interest retained by him, however remote it may be, is in fact transferred at his death. Finally, it sanctions an extension of the doctrine enunciated in May v. Heiner, supra, which case has been cited by the Supreme Court only twice since Helvering v. Hallock, supra.[8]

---

[3] The Tax Court decision was entered December 5, 1944, exactly two months before the Fidelity Co. and Field decisions.

[4] Estate of Edward P. Hughes, 7 T.C. 1348, promulgated December 16, 1946.

[5] Commissioner v. Bank of California, 9 Cir.1946, 155 F.2d 1, reversing Tax Court; Commissioner v. Bayne's Estate, 2 Cir.1946, 155 F.2d 475, reversing Tax Court; Beach v. Busey, 6 Cir. 1946, 156 F.2d 496, affirming District Court, 64 F.Supp. 220, cert. denied 67 S.Ct. 493; Thomas v. Graham, 5 Cir. 1946, 158 F.2d 561, reversing District Court.

[6] Estate of Thomas P. Leaman, 5 T.C. 699 (1945).

[7] See particularly Commissioner v. Estate of Field, 1945, 324 U.S. 113 at page 116, 65 S.Ct. 511, 89 L.Ed. 786, 159 A. L.R. 230.

[8] The two occasions were in the concurring opinions of Mr. Justice Douglas in Fidelity Co. v. Rothensies, 1945, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227, and Commissioner v. Estate of Field, 1945, 324 U.S. 113, 65 S. Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230. He said that the Supreme Court, in those cases, was not required to determine "whether the rule of May v. Heiner should survive Helvering v. Hallock." On the other hand, the Supreme Court has cited Helvering v. Hallock frequently.

It is appropriate at this point to stress that, to support the decision of the Tax Court, it must be assumed that May v. Heiner still retains its original vigor, and that the Hallock doctrine has not sounded its elegy. It is not my intent to review the volumes which have been written about May v. Heiner. It is sufficient to note that comment has been almost universally adverse;[9] and that, one day after May v. Heiner was cited as controlling decision of three similar cases, the congressional intent was clearly established in an unanimous Joint Resolution specifically imposing an estate tax upon trusts of this nature.

I find no difficulty in applying the Hallock doctrine to this case. We are told that "the statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes inter vivos transfers that are too much akin to testamentary dispositions not to be subjected to the same excise."[10] We need not concern ourselves with the casuistries of distinctions between contingent and vested remainders subject to divestment,[11] nor with testing the flimsiness of a reversionary string retained by the settlor.[12] In the case at bar, the corpus was to be distributed only to beneficiaries who survived the decedent. Since decedent might survive all designated beneficiaries, there was the possibility that the gift of the corpus would fail, for want of beneficiaries. He did not eliminate this possibility by an unconditional gift over. The string has exactly the same characteristics as though he had expressly reserved it. Why, pragmatically, should not the same legal effect be accorded? Is not the salient conclusion that there existed in the possession of decedent a reversionary interest which, until his death, delayed determination of ultimate possession of the corpus?

The practical effects of the majority opinion, it seems to me, can lead only to further confusion on the scope of the Dobson doctrine. As indicated above, the Tax Court, in Estate of Edward P. Hughes, supra, chose to adhere to its own interpretation of the three Supreme Court decisions. In so doing, the Tax Court specifically rejected the interpretation of the Second Circuit Court. Surely the Dobson doctrine cannot and should not be extended to the anomalous situation where circuit courts must accept Tax Court interpretations of law, even if such interpretations are at variance with their own.

Some controversy exists as to whether the current impasse will be resolved by the Administrative Procedure Act.[13] If the Tax Court is an "agency," and if it is subject to Section 10 of the Act, the difficulties encountered under the Dobson doctrine will be eliminated; for, under the Act, the appellate jurisdiction of this court is to include not only decision of all relevant questions of law, but also the power to set aside conclusions and findings unsupported by substantial evidence. In any event, it is my opinion that the Dobson doctrine has not so distrained this court as—to borrow a phrase uttered by Judge Frank in a recent dissenting opinion[14]—to bar judicial scrutiny whenever the Tax Court has ceremoniously woosh-wooshed.

For the reasons stated, I believe the decision of the Tax Court should be reversed.

---

9 For an excellent discussion, see Paul, Federal Estate and Gift Taxation, 1946 Supplement, c. 7, § 7.15.

10 Helvering v. Hallock, 1940, 309 U.S. 106, 112, 60 S.Ct. 444, 448, 84 L.Ed. 604, 125 A.L.R. 1368. See also Goldstone v. United States, 1945, 325 U.S. 687, 690, 65 S.Ct. 1323, 89 L.Ed. 1871, 159 A.L.R. 1330.

11 Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368.

12 See Fidelity Co. v. Rothensies, 1945, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227.

13 P.L. 404, 79th Congress, approved June 11, 1946, 5 U.S.C.A. § 1001 et seq.

14 Old Colony Bondholders v. N. Y., N. H. & H. Railroad Co., 1947, 2 Cir., 161 F.2d 413.