## TRUST CO. OF GEORGIA v. ALLEN.
### No. 11888.

Circuit Court of Appeals, Fifth Circuit.
Nov. 21, 1947.

Dan MacDougald and Robert S. Sams, both of Atlanta Ga., for appellant.

Melva M. Graney and Sewall Key, Sp. Assts. to Atty. Gen., and John P. Cowart, U. S. Atty., of Macon, Ga., for appellee.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant brought this suit to recover, as overpaid, estate taxes of $107,257.06 it had paid on a deficiency assessment based on the inclusion of the trust property in decedent's gross estate.

The primary claim of the suit was that the transfer in trust was not, within the meaning of Sec. 302(c), Rev.Act of 1926, 26 U.S.C.A.Int.Rev.Code, § 811(c), "intended to take effect in possession or enjoyment at or after [the] death [of the transferor]," and the commissioner had, therefore, erred in determining that it was, and including the whole of the transferred property in the decedent's estate. Subordinate claims were that (a) if the assets of the trust should be included in whole or in part, the valuation as of the date of decedent's death was excessive; (b) if the entire property should be included it should not be at its full value for the reason that at his death decedent's interests in it were contingent; and (c) in no event should more than two-thirds of the property be included, and this two-thirds should not be valued other than as a remainder interest. Added by amendment some two years later was the claim that during the twelve months following decedent's death there was a substantial decline in the value of part of the trust assets and plaintiff was entitled, under Sec. 302(j)[1] to have them valued as of one year after decedent's death.

The defenses were: general denial and an insistence that the deficiency assessment was correctly made.

Tried on stipulated facts,[2] there were findings and a judgment for defendant. The district Judge declared: that it was unnecessary to determine one of the conten-

[1] "If the executor so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing all the property included therein on the date of decedent's death as of the date one year after the decedent's death, except that * * * etc."

[2] On February 14, 1930, having become of age, Julian Howell, grantor in the trust and the decedent, on whose estate the taxes in question were assessed, executed the trust deed under consideration here.

Grantor's father was named as trustee, and, upon his death, appellant succeeded him.

Under the trust indenture terms, grantor was to receive the net income of the trust during his life, the trustee to pay him such part of the income as was necessary for his support and maintenance, the balance to be added to the corpus. Upon grantor's death, leaving no wife or children, the net income of the estate was to go to grantor's father and brothers during their life and to their children afterwards, or if no children to the surviving brothers. Upon the death of all the brothers, the estate was to be divided among grantor's nieces and nephews. Then follows the clause upon which, as modified in connection with an alimony agreement later made between grantor and his wife, the decision of the case turns.

"Said first party hereby expressly reserves the right to revoke this trust estate upon the arrival of said first party at the age of 40 years, in the meantime, should first party die before attaining the age of 40 years and should leave a wife and lawful issue of his marriage to said wife, then the net income from said trust estate is to be paid by the trustee not less than quarter-annually, share and share alike, to said widow and children for and during the period of their respective lives, and in the event that any of said children shall be minors, when participating in said trust estate, then said trustee shall act as guardian for such minor or minors without the requirement of bond or the making of returns to any court."

"Should said widow, if any, die, then said estate shall be divided, share and share alike, among such or said children as may survive her, the respective shares

tions of the commissioner, that the property was includable under Sec. 302(c) because the instrument failed to insure against any possibility of reverter to the grantor; since he had concluded that the revocation provision of the instrument as originally made, and as changed by the alimony settlement, had effected the retention of such an interest in, and so held in suspension, the ultimate disposition of the property transferred as to make it includable under Sec. 302(c) and the authorities construing it. He also, on the authority of Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S. Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227, and Commissioner v. Field's Estate, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230, rejected plaintiff's contention that the trust estate should not be included at its full value but at something less. Sustaining plaintiff's claim that the value of the Bibb stock at decedent's death was $101.00 and not $106, as found by the commissioner, he held that its claim that it was entitled to have the stock valued not on the date of decedent's death but as of one year thereafter, under Sec. 302(j) was not before him because not put forward in the claim for refund.

Appellant is here putting forward various arguments for, but making in substance, these primary contentions: (a) that the property transferred was not includable under Sec. 302(c) as a transfer intended to take effect at or after the death of the transferor; (b) that being a transfer containing a power to revoke, it must, if it comes under any statute, come under Section 302(d), a statute drawn especially to deal with such instruments;[3] and (c) that

---

of said surviving children to be delivered to them upon the respective attainment of their majorities."

On March 20, 1936, only a short time after his marriage to Dorothy M. Howell, grantor, with his trustee's assent, assigned to his wife for so long as the trust is being administered and she does not remarry, one-third of the net income from the 1930 trust for her support and the support of his son, Julian E. Howell, Jr. Upon the death or remarriage of the wife this income to be used for the benefit of his son. It was further agreed:

"Said Julian E. Howell hereby expressly renounces his right to revoke the said trust and agrees to allow the same to remain in full force and effect, provided, however, that he may revoke the same if, contemporaneously with the revocation, there is delivered to the said Dorothy M. Howell unconditionally and in fee simple, one-third of the corpus of the trust estate then being administered if she be then in life and may not then have remarried", or if she be dead or remarried, that he convey to or for the benefit of Julian E. Howell, Jr., his son, one-third of such corpus. It was further agreed, "that all provisions made in this contract concerning Julian E. Howell, Jr. shall terminate upon his reaching the age of twenty-one years".

Howell died April, 1937, leaving a will. November, 1939, appellant trust company, which had been named as executor, filed with the defendant as Collector of Internal Revenue, a federal tax return which disclosed the assets of the trust agreement but made no return thereof for the reason that the trustee was of the opinion that the gross estate was not includable and the return related only to an estate of some $13,000.00 conveyed by will, which was not taxable. In this return it was elected to value the estate as of the date of the grantor's death.

On June 9, 1942, the commissioner made the deficiency assessment. Appellant paid it, and on July 2, 1942, filed claim for refund in which it was asserted: that the entire gross estate was not includable for taxation or, in the alternative, if any portion of it was, a deduction should be made in proportion to the value at the time of grantor's death of one-third of the estate as affected by the alimony agreement considered in connection with the fact that the right of the grantor to revoke upon reaching the age of forty years was burdened with the obligation to deliver one-third of the corpus of the estate to the wife or the son as the case might be. No complaint was made as to date of valuation. The only complaint made as to the valuation was that the stock as of the date of decedent's death was valued at $106.00 per share instead of $101.00. It was agreed that the trust conveyance was not made in contemplation of death within the terms of the statute, and the court found that to be a fact.

[3] Cf. Commissioner v. Flanders, 2 Cir., 111 F.2d 117, at page 120; Mackay v. Commissioner, 2 Cir., 94 F.2d 558, at page 561; Tait v. Safe Deposit & Trust Co., 4 Cir., 74 F.2d 851, at page 858.

since the power to revoke was contingent and not absolute at grantor's death, Sec. 302(d) is inapplicable.

In addition, appellant puts forward these alternative contentions: (1) If any portion of the trust property should have been included, only two-thirds of it should have been, for one-third of it was excluded by the alimony agreement from decedent's right to revoke, and that two-thirds should not be valued at full value but at a discount, considering the effect on the value of the interest which might revert to grantor of the contingencies in the way of the reversion; (2) in any event it was entitled to have excluded, under the provisions of Sec. 302(d), the value of the interest which would have been excluded from decedent's right to revoke under the alimony agreement, from the date of decedent's death to the date when revocation could take effect; and (3) if wrong in both of these contentions, it was entitled, under Sec. 302(j), to have the estate valued as of one year after the date of grantor's death.

Appellee, agreeing with appellant that, since the power to revoke was not absolute at grantor's death, Sec. 302(d) does not apply to the transfer, insists that Sec. 302(c) does, both because of the positive strings by which the grantor retained his hold on the trust property,[4] and because of the possibility in law of a reverter to-him.[5]

To appellant's position that the property must be valued at less than full value, he opposes the Rothensies and Field cases, note 4, supra, holding that under Sec. 302 (c) the whole value of the property subject to the contingency, and not the value of the contingency, is the measure of the tax.

To the claim for a 302(d) (2) allowance in determining value, appellee replies that appellant's argument is completely inconsistent in that it first claims that Sec. 302 (d) does not apply to the transfer and then, when the court agreeing with this contention holds that nevertheless Sec. 302(c) does, it claims that it is entitled to the valuation allowance provided in Sec. 302(d) (2) for cases arising under Sec. 302(d).

As to appellant's claim to the right under Sec. 302(j) to a valuation of the property 12 months after, instead of on the date of, decedent's death, appellee points out that the election the statute affords is a privilege accorded by statute and, therefore, available only when made in accordance with its terms. He points, too, to the evidence showing that no claim was filed until more than the year the statute provided had elapsed and then appellant elected to file the claim on the basis of the value at the date of decedent's death. Finally, appellee points to the fact that in his claim for refund appellant made no claim on the basis of an election to value the estate as of a year afterward, nor did it make such a claim in the suit until in 1946, when the amendment was filed.

We agree with appellee on his contention that the deficiency assessment was correctly imposed under Sec. 302(c) as construed in the Supreme Court cases he cites and that the judgment for the defendant must be affirmed. As the district judge did, we, therefore, pass without deciding appellee's contention that the possibility in law of a reverter to grantor made the trust assets includable.[6] In so agreeing, we are not at all unmindful of the lack of sym-

---

[4] Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1369; Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227; Commissioner v. Field's Estate, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230; and Goldstone v. United States, 325 U.S. 687, 65 S.Ct. 1323, 89 L. Ed. 1871, 159 A.L.R. 1330.

[5] Commissioner v. Bayne's Estate, 2 Cir., 155 F.2d 475; Beach v. Busey, 6 Cir., 156 F.2d 496; Commissioner v. Bank of California, 9 Cir., 155 F.2d 1; Gallois v. Commissioner, 9 Cir., 152 F.2d 81; Thomas v. Graham, 5 Cir., 158 F.2d 561, one judge dissenting.

[6] The much debated and disputed question is before the Supreme Court on writs granted in Commissioner v. Spiegel's Estate, 7 Cir., 159 F.2d 257; and Commissioner v. Church's Estate, 3 Cir., 161 F.2d 11, and will soon be decided there.

metry, the inconsistencies, the confusion in the state of the law which have followed in the wake of the enactment of Sections 302 (c) and 302(d) of the 1926 Act,[7] results, we venture to believe, not inhering in the language of the sections but arising out of the glosses on, and interpretations of, them by Treasury regulations and rulings and court decisions.[8] Neither are we insensible to the appearance of equity in appellant's claim that under the undisputed facts showing the very substantial decline within the year in the value of its property it ought to have the benefit of the lower value under the election conferred by Sec. 302(j). In Jeffries v. Commissioner, 5 Cir., 158 F.2d 225, 226, we have, however, pointed out that: "Whether a transaction or result is taxable and what the tax is is not a matter to be determined in law upon consideration of general justice or equity. It is a matter of statutes and valid regulations, and what they mean. Neither is it to be determined in fact upon considerations of what was intended to be [or ought to have been]. Rather it is to be determined by what was done." In the light of what was there said, it is quite clear that this claim is completely foreclosed against appellant. Appellant made no such claim in his claim for refund. Besides, the statute affords merely an election, and the appellant irrevocably elected as the valuation date the date of decedent's death.

■ Appellant's contention most vigorously pressed is that Congress intended to deal exclusively in Sec. 302(d) with clauses of revocation, termination, etc., and thereby excluded from the application of 302(c), all instruments of transfer containing revocation clauses, even though such clause did not fall within the terms of 302(d). In Reinecke v. Northern Trust Company, 278 U.S. 339, 49 S.Ct. 123, 125, 73 L.Ed. 410, 66 A.L.R. 397, though Section 302(d) had been in existence some five years, the Supreme Court held taxable under prior acts, as "intended to take effect in possession or en-

joyment at or after the donor's death," the corpus of a revocable trust. In addition, in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368; Fidelity-Philadelphia Trust Company v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227, and Goldstone v. United States, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871, 159 A.L.R. 1330, it in effect held includable all transfers where by the terms of the instrument decedent retained some tangible string or hold upon the property transferred in trust by which he could get the property back. In view of these decisions, we can find no warrant for holding that though 302(d) does not deal with contingent, but only with present and absolute, powers of revocation, and, therefore, the trust in this case does not fall within that section, it must be held not to fall within Sec. 302(c). To sustain this theory, that by setting up a separate section, 302(d), to deal with powers to revoke, Congress intended to remove from the operation of 302 (c) all instruments containing powers of revocation and not merely those which brought the instruments under Sec. 302(d), would require us to rewrite, and not to interpret, the law.

■ Agreeing with appellant, as we do, that under the authorities it cites, Sec. 302 (d) does not apply, we cannot agree with its further contention that though Sec. 302 (d) does not deal with clauses of the kind in question here, it somehow has the effect of withdrawing the transfer from the operation of Sec. 302(c).

■ Finally, however much, as a matter of first impression, we might incline to the alternative view pressed by appellant that if any of the trust property should have been included, only two-thirds of it should have been, and that two-thirds should be valued at a discount, we regard the question of valuation as foreclosed in Fidelity-Philadelphia Trust Co. v. Rothensies, and Commissioner v. Field's Estate, note 4 supra.

The judgment was right. It is affirmed.

---

[7] Internal Revenue Code, § 811(c) and § 811(d), 26 U.S.C.A. Int.Rev.Code, § 811(c, d).

[8] Without burdening this opinion further, it is sufficient on this head to refer to the concise but comprehensive discussions on pp. 443 to 493, incl., Montgomery's Federal Taxes, Estates, Trusts and Gifts, 1946–7.