732

## PORTER v. BOUTIS.
### No. 1419–M–c.

District Court, S. D. Florida,
Miami Division.

Dec. 19, 1946.

Paul G. Hyman and Hilton R. Carr, Jr., both of Miami, Fla., for Office of Price Administration.

James W. Pritchard, of Miami, Fla., for defendant.

HOLLAND, District Judge.

The complaint in this case was filed March 7, 1946. Answer was filed April 10, 1946. I do not recall why the case was not tried at the July trial session; the file does not reflect the reason, but, at any rate, after several continuances incident to the fall trial session, it has come on to be tried before the Court without a jury on this December 19, 1946. The testimony has been adduced and the counsel have argued the merits of their respective positions.

The gravamen of the complaint is the alleged overcharging by the defendant for the period from May 27, 1945, to February 27, 1946, at $75 per month over and above the maximum rent of $40 per month. The basis for the alleged maximum rent of $40 per month is the registration submitted by Mr. Patterson, the rent collector for the defendant. The exact date of his registration is not shown by the copy of the registration which has been filed in evidence as Plaintiff's Exhibit 1, but as I recall the testimony it was in the early fall of 1943, and the property in the meantime—that is, subsequent to the original registration and before May 27, 1945—had been rented to, at least, two other parties; that is, separate rooms had been separately rented and ·the defendant had, herself, occupied the premises for portions of the time subsequent to the original registration and before the date of May 27, 1945.

I agree with counsel for the plaintiff in his contention that good faith is not the criterion by which to determine whether the Chandler Amendment [1] has been complied with but, at the same time, the matter of dealing by the defendant with the property does cause the Court to be of the impression that I entertain with regard to her dealing with her property. I think that she, by this testimony, is shown to be a person who is not averse to the regulations governing rental property in this area; her work has carried her up to New Jersey from time to time; she has had an upset domestic life, with rentals being collected by her husband with whom she is not now living, and proceeds of rental payments being paid over to a banking account over which he had, at least, joint control; and, in her absence, he, the husband, arranged the matter of the renting of the property.

While I am impressed with the good faith of the defendant in her activities generally

---

[1] The Chandler Amendment or Defense is the proviso in. 50 U.S.C.A. Appendix, § 925(e) reading as follows: " * * * Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation."

speaking, I do wish to call attention to the fact as to certain derelictions of which she is guilty from this record, although they are strictly not involved in the issues in the case. She returned to this area in the fall of 1943 —she stating that it was September 1943, Mr. Patterson remembering it as being November of 1943. I am inclined to believe Mr. Patterson's recollection of dates as being more correct because he states that there was a reconciling of part of the November rent—November 1943—in connection with the then tenant. It appears that thereafter —the exact dates are not in evidence, and properly not in evidence, because the issues concerning the renting of the two rooms, one to Bernstein and one to another party back in 1943, are not the basis of this action—she did, according to the testimony, rent one room to Bernstein in 1943 and another room to another tenant whose name is not in the record. Rent control was in effect at that time and, even though credence is given to her testimony that she did not know about the registration of the property by Mr. Patterson, there is no evidence that she observed any regulations of rent control, and she failed to register her property thus rented. She either knew about the Patterson registration or she did not know it. If she knew it, why, it was in the light of that registration that she rented to Bernstein and to this other party. If she did not know it, it was her duty to have registered the property herself in the first renting, or, at least, if not her first renting, to report the new tenancy because she actively did rent to Bernstein and to this other party. Now she has further shown to have been derelict in regard to renting to Mrs. Hogstett and Mrs. Cox, even though she had taken the position that she disapproved of the renting of the property to Mrs. Hogstett and Mrs. Cox. She returned to the Miami area in September of 1945. She did not take up the incompleted picture, inquire, and take the proper steps in regard to giving the Hogstetts and the Coxes copies of the registration statements that she relies upon which she had made back in February of 1945. So I do think that she has been derelict in regard to this property even though I think she is acting in good faith.

Now I come particularly to the gravamen of the complaint.

■ The theory of the plaintiff in the case is that there were two registrations, one of the property as a whole and one of the property singly, so to speak. The theory of the plaintiff is that the defendant should be held to this renting to Mrs. Cox and Mrs. Hogstett on the basis of the original registration by Patterson. I do not think that is sound. I do not think Mrs. Boutis is to be held to this renting on the basis of $40 a month as a maximum rent according to the Patterson registration when she as a matter of fact had taken the matter up with the OPA rental control office and had registered the property in February 1945; and that registration had been acted upon, had been accepted by the Office of Price Administration, had been considered, and it was changed by order of the rent director on March 9, 1945, made retroactive back to December 15, 1944. So I can not hold with the plaintiff on the theory of holding her to a maximum rent according to the Patterson registration. If that is to be followed, then she in her dealings, both for the summer period of 1945 and the period from September 1945 until February 27, 1946, would be entitled to have her liability judged by what was the registration made in February 1945. Now the total registration in February, 1945, would render the amount that she did receive, both through Miss Cory and the checks that were sent directly to her, less than the total amount of these two registrations of February 1, 1945. One of them was $12 a week—that would be $48 a month; the other one was $15 a week—that would be $60 a month. I do not think it is really necessary to go into the question of these payments made since September 1945. As to the payments that were made to Betty Cory from May up through August, 1945, the defendant has certainly put herself in the position of disapproving the renting of the property altogether. It is true, when she came back in September, 1945, she may be held to the stamp of approval of what was done because the Hogstett and Cox families remained in there; and there is no showing that she failed to benefit by the payments that went into the joint account during the

734

summer of 1945; but, even so, they are less than the amount to which she would be entitled to receive according to the February 1945 registration. The same is true in regard to the payments since September 1945. She may be criticized for cashing one, or possibly two, of the checks in the fall of 1945 before the matter was brought to her attention by an OPA investigator, but certainly when it was brought to her attention, she did the natural, normal thing of putting it all in the lap of her attorney. And, on the matter of recovery of treble damages, the verdict will go for the defendant.

I think, however, that among the several prayers there are certain phases of the matter that should receive favorable consideration. It is not right for this defendant to go hence without some compelling injunctive relief granted the plaintiff of a mandatory nature so that she would know that it was her duty in the future, in the case of renting of the property, to give these tenants copies of the registration statement. So the relief that is prayed for in Paragraph A will be granted, such registration being held to be the registration of February 1, 1945.

I think the relief prayed for in Paragraph B is applicable and proper to be granted.

I think the relief prayed for by Paragraph C is proper.

Paragraph D is not proper because Kathryn Hogstett is not now the present tenant.

Paragraph E I think is a proper relief to be granted.

A judgment in accordance with this opinion may be submitted.