W. B. BARNHILL, John F. Dillard and J. A. Phillips, Trustees of the Estate of Bessie A. Woodward, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

W. B. BARNHILL, John F. Dillard and J. A. Phillips, Trustees of the Estate of Emerson F. Woodward, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16134.

United States Court of Appeals Fifth Circuit.

Feb. 27, 1957.

Rehearing Denied April 22, 1957.

W. J. Knight, Houston, Tex., for petitioners.

Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, C. Guy Tadlock, and Walter Akerman, Jr., Attys., Dept. of Justice, John Potts Barnes, Chief Counsel, and Charles E. Lowery, Sp.Atty., I. R. S., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

These appeals from the decision and order of the Tax Court,[1] involving federal income taxes for the taxable year May 23, 1943 to April 30, 1944, and for the taxable years ending April 30, 1945, 1946, and 1947, present a single issue for review.

As petitioners state it in their brief:

"The sole issue for review is whether the Tax Court correctly held that the Commissioner of Internal Revenue, respondent here, upon a redetermination of tax liability of the two estates for the periods in question, was right in ruling that the estates were not entitled to deductions for amortizable premium under Sec. 125 of the Internal Revenue Code with respect to $2,000,000.00 of fully taxable Four Per Cent Gold Bonds of the Dominion of Canada, in which each estate had a community one-half interest.

"The bonds were wholly taxable and were of the character and held under such circumstances as to entitle the taxpayers to the deduction, and the amounts allowable were stipulated. They were disallowed by the Commissioner on the sole ground that elections to claim the deductions were not duly and timely made."

Here, basing their case for relief on four specifications of error,[2] and arguing it under two points in their brief, that under the undisputed, indeed the stipulated, facts,[3] the claims for refund for

---

1. Reported at 24 T.C. 883.

2. "1. The making and entry by the Tax Court of the United States of its decision of Dec. 7, 1955, insofar as it ruled that there was no overpayment of taxes for the taxable years ended April 30, 1944, April 30, 1945, April 30, 1946, and April 30, 1947, in the amounts claimed by Petitioners as deductions for amortizable bond premiums.

"2. The holding and ruling of the Tax Court of the United States that the election to claim the deduction for amortizable bond premiums was not effectively exercised by the taxpayers.

"3. The holding and ruling of the Tax Court of the United States that Regulation 111, Section 29.125–4 should be construed so as to deny to Petitioners the right to elect to take a deduction for amortizable bond premiums by means of claims for refund filed at the times and under the circumstances shown by the record.

"4. The failure of the Tax Court of

the United States to hold that if Regulation 111, Section 29.125–4 be construed so as to deny to petitioners the right to take a deduction for amortizable bond premiums by means of claims for refund filed at the times and under the circumstances shown by the record in this cause, it would be void and unenforceable."

3. In view of the full statement of the facts in the Tax Court's opinion, a brief statement here of the essential facts will suffice. The decedents of the taxpayer estates were husband and wife who, at the dates of their deaths in 1943, were residents of Houston, Texas. The estates of both decedents remained in administration until April 30, 1947, when they were closed by direction of the executors and the respective estates were distributed to them in their capacities as trustees. The substitute trustees named in the wills at all times material herein have been and are the duly qualified and acting trustees for the respective estates.

amortization of bond premiums (1) constituted timely filed claims for such deductions under Section 125 I.R.C., 26 U.S.C.A. § 125, and the regulations promulgated pursuant thereto; or (2) if the regulations deny validity and efficacy to the claims for refund, they are invalid as in conflict with the statute allowing the deductions, petitioners insist that they are entitled under the controlling principles of law to the deductions claimed.

The commissioner, pointing to the express language of Section 125(c) "Election on taxable and partly taxable bonds"[4] and to that of the Treasury Regulations, Section 29.125-4 "Election",[5] and citing cases[6] which it claims

---

At the date of death, each decedent owned a community one-half interest in a number of 4 percent Gold Bonds of the government of the Dominion of Canada, having a par value of $2,000,000. The bonds were interest bearing. They provided for maturity on October 1, 1960, and were callable on and after Oct. 1, 1950, but not earlier.

Called for redemption on Oct. 1, 1950, the proceeds were credited and distributed equally between the two estates when received. No method of computing amortizable bond premiums was established by the decedents prior to their death or by the representatives of their estates during the taxable periods involved herein.

The amounts of the amortizable bond premiums for the respective estates, computed in accordance with the method prescribed by the Treasury Regulations were stipulated.

Income tax returns were filed by each estate in 1944, 1945, 1946, and 1947, but no deductions for amortizable bond premiums with respect to the Canadian bonds were made in the income tax returns filed for the respective estates. However, claims for refunds for each of the years were filed on the dates shown below and in the amounts as follows:

| "F/Y ended April 30 | Date filed | Bessie A. Woodward | Amount claimed Emerson F. Woodward |
|---|---|---|---|
| 1944 | 6-9-48 | $ 9,529.26 | $ 9,590.82 |
| 1945 | 6-9-48 | 10,476.03 | 10,562.53 |
| 1946 | 11-8-49 | 8,673.32 | 9,121.45 |
| 1947 | none | · · · · · · · · | · · · · · · · |

---

4. "(1) Eligibility to elect and bonds with respect to which election permitted. This section shall apply with respect to the following classes of taxpayers with respect to the following classes of bonds *only if the taxpayer has elected to have this section apply.* [Emphasis supplied.]

\* \* \* \* \*

"(2) Manner and effect of election. The *election authorized under this subsection shall be made in accordance with such regulations as the Commissioner with the approval of the secretary shall* prescribe. If such election is made with respect to any bond (described in paragraph (1)) of the taxpayer, it shall also apply to all such bonds held by the taxpayer at the beginning of the first taxable year to which the election applies and to all such bonds thereafter acquired by him and shall be binding for all subsequent taxable years with respect to all such bonds of the taxpayer, unless, upon application by the taxpayer, the Commissioner permits him, subject to such conditions as the Commissioner deems necessary, to revoke such election. \* \* \*" (Emphasis supplied.)

5. "\* \* \* In the case of a taxpayer other than a corporation, \* \* \* *such election shall be made by the taxpayer by claiming a deduction for the bond premium in his return for the first taxable year to which he desires the election to be applicable. No other method of making such election is permitted.* If the election is so made, the taxpayer should attach to his return a statement showing the computation of the deduction. The election shall apply to all bonds, in respect of which it was made, owned by the taxpayer at the beginning of the first taxable year to which the election applies and also to all bonds of such class (or classes) thereafter acquired by him, and shall be binding for all subsequent taxable years. Upon application by the taxpayer, the Commissioner may permit him to revoke the election, subject to such conditions as the Commissioner deems necessary. \* \* \*" (Emphasis supplied.)

6. Botany Worsted Mills v. U. S., 278 U.

are controlling in principle, urges upon us that petitioners are seeking not a construction of the statute but its re-writing, not a construction of the regulation but its nullification, and that the opinion and decision of the Tax Court was right and should be affirmed.

Upon full consideration of the record, in the light of the respective contentions of the parties and of the opinion of the Tax Court, we find ourselves in full agreement with respondent's position, that for the reasons stated by the Tax Court in its opinion, with which we agree, petitioners' position is based upon the wholly untenable assumption: that, though Section 125 expressly conditions the deduction, it provides for, on the taxpayer's election by declaring: (1) that the section shall apply " * * * only if the taxpayer has elected to have this section applied", and (2) that "the election authorized under this subsection shall be made in accordance with such regulations as the Commissioner with the approval of the Secretary shall prescribe", the conditions imposed by the Statute and regulations made under its authority may be completely disregarded. Cf. Jeffries v. Commissioner, 5 Cir., 158 F.2d 225; Trust Company of Georgia v. Allen, 5 Cir., 164 F.2d 438.

Proceeding upon this assumption, petitioners argue that what and all that is under attack by the Commissioner here is the established right of a taxpayer "unless barred by the Statute of Limitations, to demand a correct computation of his tax for a past year on the facts as they existed, whether originally reported or not."

In so arguing, we think petitioners overlook or disregard the controlling language of the section providing for the deduction, that it shall apply to a taxpayer *only if he has elected to have it apply and has made the election in accordance with the regulations,* and the controlling and admitted fact that they did not make an election in accordance with the mandatory provisions of the law.

The facts and the law standing thus, petitioners are presented with the insuperable barrier of seeking the allowance of a deduction when they have not shown, and cannot show, the existence of *the essential facts which condition its allowance.*

It will serve no useful purpose to discuss or distinguish the numerous cases put forward by petitioners in support of their claim to the deductions sought. It is sufficient to say that in our opinion, none of them are directly in point, and not one of them even indirectly supports the claim.

The judgment was right. It is affirmed.

S. 282, 49 S.Ct. 129, 73 L.Ed. 379; Commissioner of Internal Revenue v. Korell, 339 U.S. 619, 70 S.Ct. 905, 94 L.Ed. 1108; Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831, rehearing denied 334 U.S. 813, 68 S.Ct. 1014, 92 L.Ed. 1744; Helvering v. Lerner Stores Corp., 314 U.S. 463, 62 S.Ct. 341, 86 L.

Ed. 482; Mother Lode Coalition Mines Co. v. Commissioner, 317 U.S. 222, 63 S. Ct. 179, 87 L.Ed. 227; Louis Pizitz Dry Goods Co. v. Deal, 5 Cir., 208 F.2d 724, certiorari denied 347 U.S. 592, 74 S.Ct. 676, 98 L.Ed. 1097; Riley Inv. Co. v. Commissioner, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36; Scaife Co. v. Commissioner, 314 U.S. 459, 62 S.Ct. 338, 86 L.Ed. 339.